Micheal F. Ram (SBN 104805)
mram@forthepeople.com
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
1390 Market Street, Suite 200
San Francisco, CA 94102
Telephone: (415) 846-3862

Jeffrey B. Cereghino, SBN 99480
jbc@cereghinolaw.com
**CEREGHINO LAW GROUP LLP**
28 Geary St., Suite 650
San Francisco, CA 94108
Telephone: (415) 433-4949
Facsimile: (415) 433-7311

*Attorneys for Plaintiff and the Proposed Classes*

[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| TAVIRA HOUSE HOMEOWNERS ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>WESTERN ALLIANCE BANK,<br><br>Defendant. | CASE NO. 2:26-cv-03743- E<br><br>**AMENDED CLASS ACTION COMPLAINT** |

Plaintiff, TAVIRA HOUSE HOMEOWNERS ASSOCIATION, files this class action complaint against Defendant, WESTERN ALLIANCE BANK and states:

## INTRODUCTION

1. Plaintiff Tavira House Homeowners Association ("Plaintiff" or "Tavira House") entered into a management agreement with Westcom Property Services ("Westcom") to manage Tavira House's property and funds. Defendant Western Alliance Bank ("Western Alliance," or "Defendant") promoted, initiated, and facilitated a payment incentive arrangement to incentivize Westcom to select Alliance Association Bank, a group of Western Alliance Bank, for Tavira House's banking needs. In exchange for depositing Tavira House's funds with Western Alliance, Western Alliance made undisclosed payments to Westcom based on deposits belonging to Plaintiff and the Class, aiding and abetting Westcom's breach of fiduciary duty. Plaintiff only recently learned of this misconduct and now sues under common and statutory law to receive restitution for itself and the class.

## JURISDICTION

2. This Court has jurisdiction over this case under 28 U.S.C. section 1332(d)(2) because (1) this is a class action with more than two hundred (200) Class Members; (2) Alliance Association Bank is a group of Western Alliance Bank, which is a corporation based in the State of Arizona; (3) Plaintiff and all Class Members are domiciled in the State of California and (4) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

## VENUE

3. Venue in this Court is proper: (1) pursuant to 28 U.S.C. section 1391(a)(1) in that Defendant does sufficient business in this District to subject it to personal jurisdiction; and (2) pursuant to 28 U.S.C. section 1391(a)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

4. Plaintiff, Tavira House Homeowners Association is a non-profit mutual benefit corporation. Plaintiff is a common interest development consisting of 45 units located in Toluca Lake, California. Plaintiff is responsible for preserving, maintaining and managing the community's common areas and common facilities and, to the extent described in Plaintiff's governing documents, providing repair and maintenance services to individual lots and residences

5. Defendant, Western Alliance Bank, of which Alliance Association Banking group is a part, was and is an Arizona corporation, under entity number 3560413, with its principal place of business in Phoenix, Arizona. Western Alliance maintains 11 offices across California, 9 in Arizona, 15 in Nevada, and one office each in Colorado, Illinois, and New York.

## FACTUAL ALLEGATIONS

6. According to the Community Association Institute, more than 70 million people live in community associations in the United States. That number is expected to double by 2040.[1] Annually, community associations collect $95.6 billion in community assessments. Community association assessments, much like municipal property taxes, are compulsory assessments used exclusively to fund

[1] https://www.caionline.org/AboutCommunityAssociations/Pages/StatisticalInformation.aspx.

essential obligations, including professional management services, utility expenses, insurance, routine maintenance and capital improvements.

7. Common interest developments (CIDs), also referred to as community associations, provide a communal basis for preserving, maintaining, and enhancing homes and property. All community associations have certain basic, defining characteristics. First, membership in a community association is mandatory and automatic for all homeowners within the community. Certain legal documents (such as community bylaws) specify the mandatory terms and conditions to be observed by all homeowners that are members of the community association, as well as by the community association itself. These documents require mutual obligations to be performed by the individual homeowner and the community at large, acting through the community association. Mandatory lien-based economic charges or assessments are levied on each homeowner to operate and maintain the community association.

8. To manage their obligations and finances, community associations routinely retain management companies to perform or oversee the obligations and functions (executive and day-to-day operational) of the community association. Community associations are non-profit organizations that are governed by volunteer oversight boards (often with significant annual turnover) consisting of layperson homeowners, and require the expertise of a professional third-party property management company. These property management companies are entrusted to handle, as agent, fiduciary and custodian, the community association's day-to-day operations including managing, receiving, tracking, collecting, accounting for, investing, and depositing the receivables from their constituent homeowners.

9. Community associations' liquid funds that are collected from member homeowners and other sources (e.g., insurance proceeds) are used to pay the

community association's operating expenses and other obligations. Applicable laws and regulations and/or the community association's governing documents uniformly require association funds to be maintained only at an insured depository institution. Deposit accounts are opened by the property management company for the community association.

10. The deposit accounts fall into two categories: (i) operating accounts established for the maintenance of the community (e.g., landscaping, insurance, labor, utilities, etc.) that the community manager uses to handle daily deposits and withdrawals of association operating funds ("operating accounts") and (ii) reserve accounts established for specific capital improvement expenditures (e.g., roofs, roads, façades, elevators, etc.) for the holding of association reserve funds as required by an association's governing documents and applicable laws ("reserve accounts").

11. Alliance Association Bank is a commercial bank "exclusively dedicated to the community association industry,"[2] and explicitly promotes its "specific industry expertise built for community associations."[3]

12. Federal law requires banks to "know their customers" and understand their customers' banking behavior. *See, e.g.*, 31 C.F.R. § 1020.220.

13. Westcom is contracted by CIDs and co-ops, including Plaintiffs and Class members, to manage CID property functions and funds. Westcom is entrusted as an agent, trustee, and fiduciary to enter the most advantageous banking relationships for, and to manage the money of, CIDs and co-ops including Plaintiff and the proposed Class members.

---

[2] https://caikeystone.org/chapter-news/the-spotlight-shines-on-alliance-association-bank/

[3] https://caikeystone.org/chapter-news/the-spotlight-shines-on-alliance-association-bank/

14. Westcom entered arrangements with Western Alliance to consolidate deposits of Westcom's clients' funds in exchange for payments, which payments neither Westcom nor Western Alliance at any time disclosed to Plaintiff or Class members. These payments are calculated based on deposited funds belonging to the CIDs. Western Alliance provided, and Westcom received, these payments in addition to other benefits flowing from the account.

15. The undisclosed payments could not have proceeded without Western Alliance's knowing participation. Western Alliance knowingly promoted, initiated, and facilitated the undisclosed accrual of secret profits by Westcom based on aggregated CID funds Westcom deposited at Western Alliance. Throughout the class period, Western Alliance never disclosed these payouts or their amounts, either monthly or annually, to Tavira House or Class members. Throughout the class period, Western Alliance never ensured that Westcom disclosed these payouts or their amounts, either monthly or annually, to Tavira House or Class members. Throughout the class period, Defendant knew that Westcom was failing to disclose these payouts or their amounts, either monthly or annually, to Tavira House or Class members.

### A. Plaintiff Tavira House Homeowners' Association Agreement With Westcom

16. Plaintiff is a non-profit mutual benefit corporation, a common interest development consisting of 45 units located Toluca Lake, California. Plaintiff is also a CID or community association for the purposes of the Davis-Stirling Common Interest Development Act (Cal. Civ. Code section 4000 et seq.). *See Retzloff v. Moulton Parkway Residents' Ass'n., No. One*, 14 Cal. App. 5th 742, 748 (2017) (The Davis-Stirling Common Interest Development Act "governs homeowners associations[]" . . . [and] "consolidated the statutory law governing

condominiums and other common interest developments." (internal quotations and citation omitted)).

17. Plaintiff retained Westcom by entering into a Management Agreement ("Agreement") and is informed and believes that this retention began on or about September 1, 2013. This Agreement automatically renewed each year and was ultimately terminated by Plaintiff on August 24, 2022.

18. Pursuant to the Agreement, Westcom was contractually bound to provide management services to Plaintiff, including management of the property, management of Plaintiff's funds, management of vendors performing maintenance and repair, accounting, legal, insurance and other related services.

19. Under the Agreement, Westcom was Plaintiff's agent and a fiduciary and was required as such to act as Plaintiff's agent and to perform a variety of financial services on behalf of Plaintiff. Services included the collection of assessments and other income received by the Plaintiff, managing reserve accounts, managing collection of delinquent assessments, including lien enforcements and foreclosures, maintaining accounting records, incurring contractual liability on behalf of the Plaintiff to pay for certain incidental repairs and maintenance items, and disbursing such payments.

20. The parties' Agreement required Plaintiff to grant access to its financial accounts to Westcom, and further required Plaintiff to move its deposits to a bank of Westcom's choosing. Westcom chose Western Alliance and was authorized and empowered to deposit Plaintiff's funds in Western Alliance, and to conduct transactions between the Plaintiff's respective accounts at Western Alliance including moving funds from reserve accounts to operating accounts. The Agreement further required Westcom to handle Plaintiff's funds without loss or undue delay.

21. Plaintiff is informed and believes that Western Alliance routinely offers payment arrangements such as the one at issue here to incentivize property management companies to bank with them. Westcom entered an agreement with Western Alliance, and perhaps other entities, under which Western Alliance paid Westcom monthly. These payments were based on the amount of deposited funds that Westcom held at Western Alliance – funds which belonged to the Plaintiff and the Class. Further, Plaintiff is informed and believes that the potential for payments to be made to Westcom was a primary benefit offered by banking institutions to compete for property management companies' business. Plaintiff is informed and believes that Westcom's ultimate selection of Western Alliance was largely motivated by the potential for more and higher payments Western Alliance offered.

22. At no time did Western Alliance disclose to Plaintiff its arrangement with Westcom to provide Westcom payments based on Plaintiff's deposited funds.

23. At no time did Western Alliance ensure that Westcom disclose to Plaintiff Westcom's arrangement with Western Alliance to derive secret profits from Plaintiff's deposited funds.

24. At all relevant times, Western Alliance was aware that Westcom was failing to disclose to Plaintiff Westcom's arrangement with Western Alliance to derive secret profits from Plaintiff's deposited funds.

25. Because of Western Alliance's misconduct, Plaintiff and Class members have suffered actual damages. Western Alliance made direct payments to Westcom despite the payments being based on Plaintiff's and the Class's deposited funds. Western Alliance knew Westcom had a statutory and fiduciary duty to disclose this arrangement with Plaintiff, and that Westcom was not disclosing this arrangement with Plaintiff nor with any of its clients. Despite this knowledge, Western Alliance promoted, initiated, and facilitated the practice of cutting Westcom a check each

and every month like clockwork. Westcom was incentivized by this benefit package to line its own pockets rather than seek the most advantageous arrangement for its clients, and clients, unaware of Western Alliance's arrangement with Westcom, had no opportunity to protest.

## CLASS ALLEGATIONS

26. Plaintiff brings this action as a class action pursuant to Rule 23(b)(2) and Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of itself and the class. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements as set forth in Rule 23(a) and Rule 23(b)(3).

27. Plaintiff advances this action on behalf of the following Class:

**Class**

> All common interest developments (CIDs) or co-ops in the State of California that engaged Westcom to manage their CID/co-op from September 1, 2013 to present, and that banked with Western Alliance Bank. Excluded from the Class is Westcom, its legal representatives, assigns and successors and any entity in which Westcom has a controlling interest. Also excluded are any entities whom any of the Plaintiff's counsel is currently suing on behalf of a client, the judge to whom this case is assigned and any member of the judge's immediate family and judicial staff.

28. Plaintiff reserves the right to modify or amend the Class definition as discovery and further investigation may warrant.

29. Numerosity (Rule 23(a)(1)). Plaintiff is informed and believes that the Class is comprised of over 200 common interest developments and community associations in California,[4] making joinder impractical. The disposition of the

[4] https://westcommgmt.com/ ("We are currently responsible for over two hundred properties located throughout the Los Angeles and Ventura County areas.") accessed March 26, 2026.

claims of these Class Members in a single class action will provide substantial benefits to all parties and to the Court.

30. Commonality (Rule 23(a)(2)). There exist questions of law and fact common to all Class Members which are all susceptible to common, class-wide proof. Common questions include, but are not limited to:

a. Whether Westcom's management agreements with Plaintiff and the Class failed to disclose payments it receives from Western Alliance;
b. Whether Westcom was required to disclose payments it receives from Western Alliance either as a fiduciary or pursuant to California Civil Code § 5375;
c. Whether Westcom had an undisclosed business relationship with Western Alliance and received undisclosed financial incentives from Western Alliance to deposit Plaintiff's and the Class Members' funds into Western Alliance;
d. Whether Westcom failed to disclose to Plaintiff and Class Members that it was paid significant funds based upon deposits belonging to the Plaintiff and Class;
e. Whether Western Alliance knew Westcom failed to disclose to Plaintiff and Class Members that Western Alliance was paying Westcom significant funds based upon deposits belonging to the Plaintiff and Class;
f. Whether Westcom had a fiduciary duty to Plaintiff and Class Members to disclose the benefits it obtained from its clients' money;
g. Whether the facts not disclosed by Westcom to Plaintiff and Class Members are material;
h. Whether Western Alliance aided and abetted Westcom's nondisclosure of the payment arrangements;
i. Whether Plaintiff and Class Members are entitled to compensatory damages, restitution, and the amounts of such damages and restitution;
j. Whether Western Alliance should be declared financially responsible for notifying all Class Members of the payment arrangements;

k. Whether Western Alliance should be ordered to make full restitution to Plaintiff and Class Members.

31. Because Western Alliance's alleged misconduct consists of deals it struck with Westcom based on aggregated deposit accounts for many of Westcom's clients, the core issues of this litigation are susceptible to class wide proof – such as account analyses and details of deals struck – and do not require individualized proof.

32. Typicality (Rule 23(a)(3)). The representative Plaintiff's claims arise from the same legal theories and operative facts. Plaintiff's claims are typical of the Class in that the representative Plaintiff, like all Class Members, is a community association whose property manager opened accounts on behalf of the association with Western Alliance, which then paid Westcom profits on those deposits without disclosing said payments to the association. The representative Plaintiff, like all Class Members, has suffered a common injury: Western Alliance aided and abetted Westcom's breach of its statutory and fiduciary duty to Plaintiff and Class Members, enabling Westcom to improperly and wrongfully profit from Plaintiff's and Class Members' funds. The factual basis of Western Alliance's misconduct is common to all Class Members.

33. Adequacy (Rule 23(a)(4)). Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting consumer class actions, including actions involving issues like those raised in this case. Plaintiff and its counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor its counsel have any interest adverse to those of the Class.

34. Predominance of Common Questions (Rule 23(b)(3)). Common questions of law and fact predominate over questions involving individualized analysis. Fundamentally, there is no material question of fact or law that is not

common to Class Members. Common issues of fact include that all Class members entered into a contractual relationship with Westcom and Westcom entered into an agreement with Western Alliance on behalf of Class members, Western Alliance offered payment incentives without disclosing them to the Class members, Westcom pursued its own interests (rather than Class members') in managing Class members' community funds, Westcom failed to disclose its payment arrangements with Western Alliance, and Western Alliance knew of Westcom's failure to disclose the payment arrangements.

35. Westcom's failure to disclose the payment arrangements is a common question. Western Alliance's knowledge of Westcom's failure to disclose is likewise a common question. Because Defendant's alleged misconduct consists of deals it struck with Westcom based on aggregated deposit accounts for many of Westcom's clients, the core issues of this litigation are susceptible to class wide proof – such as account analyses and details of deals struck – and do not require individualized proof. Common questions of law include whether Western Alliance's conduct violates statutory law, and the Class Members' entitlement to damages and other remedies.

36. <u>Superiority (Rule 23(b)(3)).</u> Plaintiff and Class Members have all suffered and will continue to suffer harm and damages because of Western Alliance's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the subject controversy. Because of the number of impacted Class Members, and the cost of litigation, most Class Members likely would find the cost of litigating individual claims to be prohibitive. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation because it conserves the resources of the courts and the litigants and promotes consistency and efficiency

of adjudication. There is no impediment to the management of this action because the common questions of law and fact to all Class Members are virtually identical.

**ESTOPPEL FROM PLEADING THE STATUTE OF LIMITATIONS AS A DEFENSE**

37. Western Alliance concealed material truths for years, never disclosing either its payment incentives to Westcom, nor the profits Westcom reaped from Class Members' deposits.

38. Western Alliance's knowing involvement in this concealment also include, but are not limited to, aiding and abetting Westcom's violation of its fiduciary obligations to Class Members.

39. Based upon Western Alliance's misrepresentations, omissions and concealment, Western Alliance is equitably estopped from asserting a statute-of-limitations defense. Plaintiff learned of Western Alliance's misconduct in discussions with its counsel in the last few months. Plaintiff could not reasonably have discovered the misconduct earlier than that.

**FIRST CAUSE OF ACTION**

**Aiding and Abetting Breach of Fiduciary Duty**

40. Plaintiff incorporates by reference the allegations contained paragraphs 1 through 39 of this complaint.

41. This is an action against Western Alliance for aiding and abetting Westcom's breach of its fiduciary duty to Plaintiff.

42. Plaintiff and the Class entered into a fiduciary relationship with Westcom whereby they relied on Westcom to act in their best interests. As a result of this fiduciary relationship Westcom had a duty to act with loyalty, care and honesty and to avoid conflicts of interest. Additionally, California Civil Code § 5375(d) requires a prospective managing agent of a common interest development to provide a written statement 90 days prior to entering into a management

agreement disclosing "any business or company in which the common interest development manager or common interest development management firm has any ownership interests, profit-sharing arrangements, or other monetary incentives provided to the management firm or managing agent."

43. Despite the existence of this relationship, and Westcom's duties pursuant to the relationship, Westcom breached its fiduciary duty to Plaintiff and Class Members by forming an undisclosed arrangement with Western Alliance to receive incentive payments based on funds belonging to the community associations it managed. Westcom violated its fiduciary duties by prioritizing its own financial enrichment above Plaintiff's and Class Members' best interests when carrying out its management duties. Westcom failed to disclose its conflict of interest with Western Alliance and secret profits made from its management of Class Members' deposited funds.

44. Western Alliance had actual knowledge of Westcom's failure to disclose the incentive payment arrangement.

45. Western Alliance knowingly and substantially assisted Westcom's breach by similarly failing to disclose, and failing to make disclosure a requirement of the continuance of, the incentive payment arrangement. Western Alliance further substantially assisted Westcom's breach of fiduciary duty by promoting, initiating, and facilitating the payment arrangement, intentionally offering payments as an incentive for Westcom to use its services over its competitors'. Defendant used the payment arrangements as a mechanism to attract commercial accounts such as Westcom's, knowing that requiring Westcom to disclose the arrangement would significantly weaken the allure of the financial benefits Western Alliance was offering.

46. Western Alliance's actions were a substantial factor in enabling Westcom to continue receiving payments without disclosing them – carrying out

and prolonging Westcom's breach of fiduciary duty. If Western Alliance had made the payment arrangements contingent on disclosure, Westcom would not have been able to breach its obligations to Plaintiff and the class. Instead, Western Alliance dutifully wrote Westcom a check each and every month, with full knowledge that Westcom had not disclosed these benefits to its clients.

47. As a direct and proximate result of Western Alliance's aiding and abetting of Westcom's breach of fiduciary duty, Plaintiff and members of the Class have been damaged in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

### Violation of California Unfair Competition Law - Unlawful Business Practice

48. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 39 of this complaint.

49. This is an action against Western Alliance for violation of California Unfair Competition Law, pursuant to the unlawful business practice prong.

50. California Business and Professions Code section 17200 et seq. prohibits acts of unfair competition, which includes unlawful business practices.

51. Westcom engaged in unlawful business practices that entailed an intentional failure to disclose, contrary to California statutes set forth in this Complaint, its incentive payment arrangements with Western Alliance.

52. Westcom's practices constitute an unlawful business practice because they violate Civil Code sections 5375, 5375.5, 5380 as well as California common law for breach of fiduciary duty.

53. Western Alliance's practices constitute an unlawful business practice because they violate California common law for aiding and abetting breach of fiduciary duty.

54. To this day, Western Alliance has engaged and continues to engage in unlawful business practices by substantially assisting in Westcom's breach of

fiduciary duty and knowingly failing to disclose to Class Members the payments it provides to Westcom based on Class Members' deposits.

55. As a direct and proximate cause of Western Alliance's unfair and unlawful methods of competition and unfair, deceptive or unlawful acts or practices, Plaintiff and Class Members have suffered money damages in the amount of undisclosed funds unjustly paid to Westcom.

56. As a proximate result of its unlawful practices, Western Alliance has been unjustly enriched and should be required to make restitution to the Plaintiff and Class Members pursuant to sections 17203 and 17204 of the California Business & Professions Code.

## THIRD CAUSE OF ACTION

### Violation of Unfair Competition Law – Unfair Business Practice

57. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 40 of this complaint.

58. This is an action against Western Alliance for Violation of the Unfair Competition Law, unfair prong.

59. Western Alliance engaged in an unfair business practice by knowingly failing to disclose material facts to Plaintiff and Class Members regarding its payment arrangement and improper payment of benefits.

60. Western Alliance engaged in unfair business practices because it knowingly formed an undisclosed arrangement with Westcom to provide incentive payments in exchange for Westcom depositing Plaintiff and Class member funds with Western Alliance. Western Alliance thereby substantially assisted Westcom's violation of its fiduciary duties to Plaintiff by unfairly incentivizing Westcom to prioritize its own financial enrichment above Plaintiff's when carrying out its management duties.

61. Western Alliance's business practices outlined above are unfair because they substantially injure consumers—the associations that rely upon Westcom to make financial decisions in the communities' best interests—by incentivizing property management companies to conceal financial arrangements that involve the community's funds and to retain undisclosed profits and other benefits that are accrued on associations' funds.

62. Here, the injury to consumers is not outweighed by any countervailing benefits to consumers or competition. Consumers receive no benefit from the kickbacks paid to Westcom. The secret payment arrangements harm competition because only the largest community management firms, such Westcom, have access to enough client funds to qualify for lucrative payment arrangements. The only party that benefits in this scenario is conglomerate management firms, such as Westcom, which only grow larger, richer and more powerful as a result of these payment arrangements.

63. Finally, the injury could not reasonably have been avoided by Plaintiff and Class Members because Western Alliance and Westcom have equally actively concealed or otherwise failed to disclose these unfair practices.

64. To this day, Western Alliance has engaged and continues to engage in unfair business practices by substantially assisting in Westcom's breach of fiduciary duty and knowingly failing to disclose to Class Members the existence or amount of payments it provides to Westcom based on Class Members' deposits.

65. As a direct and proximate cause of Western Alliance's unfair practice, Plaintiff and Class Members are entitled to restitution in the amount of the undisclosed payments, unjustly provided to Westcom.

66. As a proximate result of their unfair practices, Western Alliance has been unjustly enriched and should be required to make restitution to the Plaintiff

and Class Members pursuant to sections 17203 and 17204 of the California Business & Professions Code.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enter judgment against Western Alliance Bank and in favor of Plaintiff, and to award the following relief:

1. Certification of a class consistent with the class definitions and appointment of Plaintiff as class representative;
2. Appointment of the undersigned as counsel for the proposed Class;
3. A declaration that Western Alliance is financially responsible for notifying all Class Members;
4. A declaration that Western Alliance must make full restitution to Plaintiff and the Class Members;
5. An award of costs and attorneys' fees, as allowed by law, and/or from a common fund created hereby;
6. Leave to amend to conform to the evidence presented at trial; and
7. Orders granting such other and further relief as may be appropriate.

## **JURY TRIAL DEMAND**

Plaintiff hereby demands a jury trial for all individual and Class claims so triable.

Dated: April 15, 2026

Respectfully Submitted,

By: */s/Michael F Ram*

Michael F. Ram, SBN 104805
mram@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
1390 Market Street, Suite 200
San Francisco, CA 94102
Telephone: (415) 846-3862

Jeffrey B. Cereghino, SBN 99480
jbc@cereghinolaw.com

CEREGHINO LAW GROUP LLP
28 Geary St., Suite 650
San Francisco, CA 94108
Telephone: (415) 433-4949
Facsimile: (415) 433-7311

Colette F. Stone, SBN 129773
cstone@stonelawoffice.com
STONE &ASSOCIATES, APC
2125 Ygnacio Valley Road, Ste 101
Walnut Creek, CA 94596
Telephone: (925) 938-1555

J. Barton Goplerud (pro hac vice forthcoming)
goplerud@sagwlaw.com
SHINDLER, ANDERSON, GOPLERUD & WEESE
5015 Grand Ridge Dr, Unit 100
West Des Moines, IA 50265
Telephone: (515) 223-4567

Robert Shelquist (pro hac vice forthcoming)
Rshelquist@cuneolaw.com
CUNEO GILBERT & LaDUCA, LLP
5775 Wayzata Blvd., Suite 620
St. Louis Park, MN 55416
(612) 254-7288

*Attorneys for Plaintiff and the Proposed Classes*